## Rosa v. Rosa, Appellant.

Argued November 21, 1928.

416

Before
Henderson, Trexler, Keller, Linn, Gawthrop and
Cunningham, JJ.

*H. Eugene Heine,* for appellant.

*Marshall A. Coyne,* for appellee.

Opinion by Linn, J., January 25, 1929:

Appellant complains of a decree of divorce granted on the ground of her desertion; she concedes that she left her home and from time to time refused her husband's offers of reconciliation. A clear case of divorce within the statute was therefore made out (Van Dyke v. Van Dyke, 135 Pa. 459; Neagley v. Neagley, 59 Pa. Superior Ct. 565, 571) and must be affirmed, unless appellant has shown some legal excuse for leaving and remaining away from her husband. She excuses her conduct on two grounds: libellant's cruel and barbarous treatment, and indignities to the person rendering her condition intolerable and life burdensome; either, if proved, would excuse her, but neither is supported by the weight of the evidence.

It has been said: "If there is anything settled in the law of divorce, it is that the reasonable cause

which will justify a desertion must be such as will authorize a dissolution of the marriage bond. Where a desertion is conceded or appears, and is without sufficient legal reasonable cause, it is presumed to be wilful and malicious, and if persisted in for two years or more, will entitle the injured party to a divorce." Van Dyke v. Van Dyke, supra. See also Neagley v. Neagley, supra; Lomax v. Lomax, 87 Pa. Superior Ct. 543; Headland v. Headland, 88 Pa. Superior Ct. 417.

We come then to consider the evidence offered in justification of the desertion in the light of the rule quoted, bearing in mind, however, another rule that a clear case within the statute must be made out by the party claiming the right to leave the other.

The parties were married December 26, 1923. Appellant left her home on or about September 10, 1924, —less than ten months after their marriage,—and removed and retained their household furniture and equipment. The libellant was then somewhat over thirty years of age, and appellant twenty-six; he was a teacher of Spanish in one of the Philadelphia high schools earning $3,200 a year; she was employed, and after marriage continued in her employment, as secretary and managing clerk in a lawyer's office at $35 a week. Immediately after their marriage they moved into an apartment furnished by libellant at a cost of about $2,000.

Her testimony, and that of witnesses called on her behalf, states few relevant facts of importance; some we do not credit. Two matters stand out as causes of dissatisfaction; one, whether or not they should make their home with her parents as she desired; the other, whether her earnings or his, or how much of each, should be spent.

It would seem that the differences concerning their place of residence, whatever they were in the beginning, should have ceased to be a serious cause of complaint after July 14, 1925, when they moved to 2229

McKean Street, a house purchased by them, title subject to a mortgage, being taken in her name, the cash payment having been contributed by both, she contributing more than her husband. It is not denied that their home was adequately furnished. No reason appears in the evidence why appellant was or should have been dissatisfied with the house or its contents; to the extent therefore that failure to live with her parents was a subject of dissatisfaction worthy of consideration, it should have ceased to be so, and we lay it aside as an element in the defense.

We can understand from the evidence that the parties differed concerning the use to be made, and, in fact, made of their earnings, but we find no basis to support the allegation of cruelty or of indignities within the prohibition of the statute; in arriving at this conclusion, we cannot disregard the fact that these parties had tried but for a very short time to adjust themselves to the "give and take" of the matrimonial relation assumed by them.

Our study of •the voluminous record confirms the conclusion reached by the master (who saw and heard the parties) stated as follows: "In approaching the testimony we must bear in mind that the parties are temperamental and easily excited; that during the time they lived together the libellant was teaching in school during daytime and studying law at nighttime and thereby became overworked, overwrought and nervous. They are both loquacious, and were incompatible. The difficulties, broadly stated, were as alleged by the libellant, that his wife constantly importuned him to live with her folks, who aided and abetted her in that direction. The respondent claims that her husband only wanted her money. These things precipitated many arguments and engendered ill feeling."

There is no important uncontradicted evidence of physical cruelty. She says he "slapped" her twice

and "shoved" her once; he denies the accusations. We are not aided by mere statements in the evidence such as the following: "He lies. He has no sense of truthfulness or respect for anybody. He defies everybody. His talk is terrible. He was as mean and brutal as he could be." Such conclusions are not helpful in the absence of credible evidence of facts that support them.

Libellant, no doubt, lost his temper, at times behaved badly and said things that warranted the description of him quoted above from the master's report, but when we consider all the credible evidence, it does not furnish the quantum of proof required by our law to warrant the granting of a divorce to the respondent for either of the grounds she gives for her desertion: Van Dyke v. Van Dyke, supra; for that reason this appeal fails.

We attach considerable importance to the fact that repeatedly after the separation the libellant made apparently sincere efforts at reconciliation; we see no reason to doubt that they were made in good faith. Some of these efforts were made in person, some by letters addressed to her; some were made by the intercession of parties sent by him for the purpose; we notice that at one stage of the proceeding in the municipal court (the record of which is in evidence) a probation officer reported that "there was a partial reconciliation;" unhappily it was not completed. Even during the hearings before the master libellant proposed reconciliation; we cannot avoid the conclusion that his proposals did not receive the consideration they deserved in the circumstances disclosed by the record: Neagley v. Neagley, 59 Pa. Superior Ct. 565; Pomerantz v. Pomerantz, 71 Pa. Superior Ct. 241.

Judgment affirmed, costs of the appeal to be paid by appellee.