## Walsh, Appellant, v. Walsh.

Argued March 6, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Clarence Balentine,* of *Kelly, Balentine, Fitzgerald & Kelly,* for appellant.

*Stanley F. Coar,* and with him *David J. Reedy,* for appellee.

OPINION BY RHODES, J., April 22, 1935:

This is an action of divorce brought by Patrick J. Walsh, the libellant, against his wife, Charlotte Walsh, the respondent. The ground alleged in the libel by the husband is wilful and malicious desertion. A responsive answer denying the charge was filed by the respondent and the case heard by the court below, which refused the divorce and dismissed the proceedings at the cost of the libellant. From the decree of the court the libellant appealed.

We have carefully read and considered the testimony, since it is our duty "to examine the evidence de novo and determine whether the court below reached a correct conclusion: Nacrelli v. Nacrelli, 288 Pa. 1, 136 A. 228; Esenwein v. Esenwein, 312 Pa. 77, 167 A. 350; Langeland v. Langeland, 108 Pa. Superior Ct. 375, 164 A. 816": Mathias v. Mathias, 114 Pa. Superior Ct. 444, 446, 174 A. 821.

The only witnesses were the libellant and the respondent. The testimony shows that the parties were married on February 8, 1922. Immediately following their marriage they lived for a short time at the Hotel Marquette in the City of Scranton, and thereafter moved to the Borough of Olyphant where they lived together until February, 1923 when they separated, the respondent going to live with her parents in the City of Scranton. A daughter was born to the libellant and respondent in the year 1922. The respondent and the daughter were living at the time of the present action at the home of her parents, 1114 Delaware Street, Scranton, Pa.

The testimony shows in our judgment that the libellant (1) did not act in good faith; and (2) has not met the burden of proof required to make out a case of wilful and malicious desertion on the part of the respondent.

The libellant and respondent had not lived together since 1923, and from that time until September, 1929 he had never called upon the respondent, although they both were living in the City of Scranton.

On September 3, 1929, the libellant, who had for many years previous been living apart from his wife in the same city, leased a house from his mother located in the town of Jessup which was about five miles distant from Scranton. This was a rather dilapidated building, having no heating apparatus, hot water, bath or toilet facilities with the exception of a broken toilet in the cellar on an earth floor. On September 5, 1929, the libellant got in touch with the respondent for the first time in many years by writing her a letter in which he asked her to resume their marital relations and informed her that he had leased the house in Jessup for that purpose. This letter was written in a very stiff, somewhat formal, unusually precise, style, and libellant admitted that his attorney had been very helpful in writing the letter. In it libellant laid stress upon the fact that his undertaking business required him to locate in Jessup. His testimony did not substantiate this statement. The respondent replied on September 12th advising the libellant that she was willing to resume their marital relationship if he would provide a home in a suitable location, in a suitable condition and suitably furnished. They met on several occasions and inspected the home and purchased furniture. The respondent, on October 31, 1929, went with her daughter to the home at Jessup provided by the libellant. Here she remained two nights, one entire day and part of another day. Libel-

lant's testimony on the condition of the house at Jessup at this time is very evasive, indefinite and unsatisfactory. Respondent's is by far the more credible and shows that there was no toilet in the house except a dirty broken one located in the cellar on a dirt floor; that there was water in the cellar; that there was no hot water, no bathing facilities, not even a washbowl and that the heat in the upstairs rooms was far from adequate.

On the night of November first, the daughter was taken ill with scarlet fever. On account of this illness, especially in view of the condition of the house, the respondent was obliged to take the child back to her parents' home in Scranton. There the child was quarantined with scarlet fever until November 30, 1929. Subsequently she had her tonsils removed which necessitated her remaining in the house of respondent's parents until the middle of January, 1930. During this entire time the libellant did not call to see his wife or child. However, four days after their departure to the home of respondent's parents in Scranton, where proper facilities were available to care for the sick child, he again wrote a letter to the respondent in which he offered to furnish the necessary medical attention for their daughter, but he was careful to inject the following statement, wholly unwarranted under the circumstances: "Altho you persist in your refusal to come to me with her at my home in Jessup." No child ill with scarlet fever could be expected to be removed to such a house as provided by the libellant for his family.

Although, on September 28, 1929, the libellant received an estimate from a local plumber in the amount of $205.75, covering the cost of installing plumbing fixtures, including a bath tub, hot water boiler and toilet facilities, he took no action in spite of the frequent

requests of the wife, who further testified that he repeatedly said these facilities would not be installed.

The evidence does not show that the previous separation of the parties constituted a desertion on the part of the respondent. Hence, in order for libellant to be entitled to a decree he "must first, *in good faith,* take some unequivocal step looking to a resumption of the family relation between them which is rejected by the other." (Italics ours): Weisbrod v. Weisbrod, 103 Pa. Superior Ct. 267, 156 A. 542.

The libellant was obliged to prove that he had in good faith provided a suitable home for the respondent and their child, and that the respondent refused without cause to accept this offer: Loughney v. Loughney, 111 Pa. Superior Ct. 214, 219, 169 A. 460; McBrien v. McBrien, 63 Pa. Superior Ct. 576 at 579; Daubert v. Daubert, 104 Pa. Superior Ct. 8, 159 A. 81. Without proof of these facts there could be no desertion upon the part of the respondent in this case. The self-evident insincerity of his letter of September 5, 1929 asking her to return to Jessup; the fact that the proposed home was wholly inadequate; that he had no real necessity for going to Jessup because of his undertaking business, although he had so stated in his letter to her; that he never visited her or their child during all the years of their separation or after they left Jessup on November 2, 1929; that during all these years he only paid her $75 for support; his general cold and inconsiderate attitude, all show a total lack of good faith on his part and a studied effort to place the respondent in a position where he could show wilful and malicious desertion on her part.

The libellant in this case had no witnesses other than himself. A decree may be based upon the testimony of the libellant alone: Reinhardt v. Reinhardt, 111 Pa. Superior Ct. 191, 169 A. 408; Rommel v. Rommel, 87 Pa. Superior Ct. 511. However, the evidence

before us furnishes no adequate proof of wilful and malicious desertion on the part of the respondent. She endeavored to comply with the libellant's request set forth in his letter of September 5, 1929 to resume their marital relations. She had requested a suitable home for herself and the child who was about eight years old. The home offered must be a suitable one with regard to the circumstances of the husband: McBrien v. McBrien, supra; Loughney v. Loughney, supra; Mc-Campbell v. McCampbell, 64 Pa. Superior Ct. 143; Horn v. Horn, 17 Pa. Superior Ct. 486. There is no doubt from the testimony but that the libellant could have provided a suitable home if he sincerely wanted to. Although his income does not appear to have been large, he nowhere complains that money was lacking.

The desertion must be wilful and malicious and without cause: Weisbrod v. Weisbrod, supra; Thompson v. Thompson, 50 Pa. Superior Ct. 159, 166, (and cases cited). His failure to provide proper facilities in the home was a sufficient cause for her leaving. The serious illness of her daughter also necessitated her return to her parents' home where adequate facilities were available. Either or both of these things were sufficient causes for her withdrawal, and they overcome any inference that her leaving was wilful or malicious. Respondent's leaving the house at Jessup with the sick child was not only justified, it was also done with the consent of libellant. A consentable separation is not a wilful or malicious desertion: King v. King, 36 Pa. Superior Ct. 33; Pomerantz v. Pomerantz, 71 Pa. Superior Ct. 241; Neagley v. Neagley, 59 Pa. Superior Ct. 565; Price v. Price, 83 Pa. Superior Ct. 446; Hill v. Hill, 96 Pa. Superior Ct. 410.

Subsequent to the departure of the respondent and the sick child on November 2nd, the libellant made no effort to provide the home with modern conveniences which had been requested by the respondent, appar-

ently promised and later refused by him. He did not call upon his wife or the child during its serious illness, but contented himself with a communication to his wife dated November 6th while the child was still ill, requesting that they return to the home in Jessup. She was not, therefore, at the time of, or subsequent to, the alleged date of desertion under any duty to return to him. We are of the opinion that the libellant in this case has wholly failed to meet the burden of proving by a preponderance of evidence a wilful and malicious desertion without reasonable cause on the part of the respondent: Isenberg v. Isenberg, 75 Pa. Superior Ct. 551; Patton v. Patton, 97 Pa. Superior Ct. 562; Noden v. Noden, 111 Pa. Superior Ct. 513, 170 A. 465; Walter v. Walter, 83 Pa. Superior Ct. 14; Sarver v. Sarver, 96 Pa. Superior Ct. 285.

The decree of the lower court dismissing the libel is affirmed at the cost of the appellant.